**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

JOSHUA VAZQUEZ, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS,

Plaintiff,

v.

KELLY & ASSOCIATES INSURANCE GROUP, INC.

Defendant.

Case No:

**COMPLAINT FOR:**

(1) Violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150
(2) Violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56.101
(3) Negligence

**DEMAND FOR JURY TRIAL**

**CLASS ACTION**

Plaintiff Joshua Vazquez. ("Plaintiff"), individually and on behalf of classes of similarly situated individuals (defined below), brings this action against Kelly & Associates Insurance Group, Inc. ("Kelly Benefits" or "Defendant") and alleges as follows:

## I. SUMMARY OF THE CASE

1. Defendant Kelly Benefits is one of the nation's largest and fastest-growing providers of benefits administration and technology, broker and consulting services, and payroll solutions in the U.S. Kelly Benefits collects and maintains highly sensitive personally identifiable information ("PII") and personal health information ("PHI") for hundreds of thousands of individuals, including names and Social Security Numbers ("SSNs").

2. Kelly Benefits acquires the PII and PHI through its regular business practices. Defendant's clients are generally businesses that entrust Defendant with their employees' PII and PHI. In many cases, Defendant's clients also provide PII OR PHI for family members of employees, as the family members often serve as secondary benefit recipients. Defendant retains this PII and PHI for many years.

3. From December 12, 2024 through December 17, 2024, Kelly Benefits lost control of much of its PII and PHI due to a breach by third-party hackers. During the Data Breach, hackers copied and took files from Kelly Benefits' database. In the subsequent investigation, Kelly Benefits determined that Plaintiff's and Class Members' information was subject to the copying and theft by the hackers.

4. According to Kelly Benefits' investigation to date, more than 400,000 individuals were subject to the Data Breach.

5. Despite the Data Breach occurring in mid-December 2024 and Kelly Benefits completing its review on March 3, 2025, Kelly Benefits did not inform Plaintiff and Class Members until April 2025.

6. In its notice to affected individuals, Kelly Benefits explained to Plaintiff that it was writing "to inform you of a recent incident that may impact some of your information, including protected health information ("PHI")" and that the information involved was at least "your name and Social Security Number, health or other insurance group ID number."

7. Kelly Benefits has acknowledged that the information accessed in the Data Breach included at least the following:

a. names;

b. Social Security numbers; and

c. health or other insurance group ID numbers.

8. Kelly Benefits failed to maintain reasonable security safeguards and protocols to protect its users' PII or PHI. For example, it appears that none of the information accessed in the Data Breach was encrypted or redacted in any manner. Kelly Benefits lacked reasonable systems to detect a data breach, as it took Kelly Benefits nearly three months to uncover the data breach. Kelly Benefits lacked reasonable systems to determine which individuals were impacted by the Data Breach, demonstrated by the fact Kelly Benefits took almost two months to inform individuals impacted by the Data Breach once the breach was detected.

9. As a result of the misconduct alleged herein, Defendant was negligent and violated the California Consumer Privacy Act ("CCPA") and California's Confidentiality of Medical Information Act ("CMIA").

## II. PARTIES

10. Plaintiff Joshua Vazquez is a recipient of benefits from a customer of Kelly Benefits. At all relevant times, he has been a resident of California. As a result, he has provided his PII to Kelly Benefits. On or about March 3, 2025, Plaintiff Vazquez received a breach notice from the Defendant notifying him that his personal information was accessed in the Data Breach.

11. Defendant Kelly Benefits is a Delaware corporation headquartered at 1 Kelly Way, Sparks, MD 21152.

## III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Kelly Benefits and Plaintiff are citizens of different states. There are well over 100 Class Members given that the Data Breach impacted an estimated 260,000 individuals.

13. This Court has personal jurisdiction over Kelly Benefits because it is headquartered in this district and conducts substantial business in this district..

14. Venue is proper in this Court because Defendant is headquartered in this district and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this district.

## IV. CLASS ACTION ALLEGATIONS

15. Plaintiff bring this class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following classes:

1. The **Nationwide Class**: All individuals whose PII or PHI was exfiltrated or stolen in the Data Breach; and
2. The **California Class**: All persons residing in California whose PII or PHI was exfiltrated or stolen in the Data Breach.

16. Specifically excluded from the Classes are Defendant; its officers, directors or employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also excluded from the Classes are attorneys participating in this matter and the members of his or her immediate family, any federal, state

or local governmental entities, any judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action.

17. The Class Period is the full extent of the applicable limitations period, including any tolling or other equitable considerations that extend the limitations period.

18. Class Identity: The Classes are readily identifiable and are classes for which records should exist.

19. Numerosity: Class Members are so numerous and geographically dispersed that joinder is impracticable. Hundreds or thousands of Nationwide Class Members had their data accessed by an unauthorized third party in the Data Breach. At least tens of thousands of California Class Members had their data accessed by an unauthorized third party in the Data Breach.

20. Typicality: Plaintiff's claims are typical of the claims of Class Members because Plaintiff and Class Members had their information accessed by an unauthorized third party in the Data Breach due to the same conduct by Defendant.

21. Defendant has acted in a manner that applies generally to Plaintiff and all Class Members. Each Class Member has been similarly impacted by Defendant's failure to implement reasonable security measures to protect Class Members' PII and/or PHI.

22. Commonality: There are questions of law and fact common to the Classes, including:

(a) Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class Members' PII and/or PHI;

(b) Whether Defendant breached its duty to use reasonable care with respect to the Data Breach and/or its response to the Data Breach;

(c) Whether Defendant had reasonable systems in place to protect against and/or detect the Data Breach;

(d) Whether Defendant had reasonable systems in place to respond to the Data Breach;

(e) Whether Defendant's notice to Plaintiff and Class Members was reasonable; and

(f) Whether Plaintiff and Class Members were harmed by the Data Breach.

23. Predominance: The above-listed questions of law and fact common to all Class Members predominate over questions that may affect individual Class Members.

24. Adequacy: Plaintiff will fairly and adequately protect the interests of the Classes in that Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Classes. Plaintiff has also retained counsel competent and experienced in the prosecution of class actions and complex data privacy cases to represent them and the Classes.

25. Superiority and Manageability: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class Members is impracticable. The individual prosecution of separate actions by individuals would lead to repetitive adjudication of common questions of fact and law and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant. There will be no difficulty in the management of this action as a Class action.

## V. FACTUAL BACKGROUND

26. Kelly Benefits is one of the nation's largest and fastest-growing providers of benefits administration and technology, broker and consulting services, payroll solutions and other comprehensive tools and strategies to serve businesses of all sizes.

27. Due to the nature of its business, Kelly Benefits receives and maintains PII and PHI from customers, their employees, and their family members across the country. Specifically, to obtain benefits provided by Defendant, Plaintiff and Class Members were required to provide Defendant with their PII and PHI, including names, addresses, dates of birth, and SSNs. Defendant held this information for Plaintiff and Class Members in unencrypted and unredacted form at the time of the Data Breach.

28. Under state and federal law, contract, industry standards, and representations made to its clients, Kelly Benefits had a duty to protect the PII and PHI of Plaintiff and Class Members, including under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the California Consumer Protection Act of 2018 (the "CCPA"), Cal. Civ. Code § 1798, et seq. It likewise had a duty to timely alert these individuals that their PII and PHI was accessed by an unauthorized third party.

29. Defendant derives a substantial financial benefit from the PII and PHI that it collects. Defendant could not efficiently or profitably conduct its business without collecting Plaintiff's and Class Members' PII and PHI, as it needed this information to facilitate the benefits and services it provides.

### *A. The Data Breach*

30. Between approximately December 12, 2024 and December 17, 2024, Defendant was subject to unauthorized access to its data by a third-party. Certain files were copied and taken.

31. Kelly Benefits did not detect the Data Breach until March 3, 2025 – 81 days after the Data Breach first occurred.

32. The hackers were able to access at least the following PII:

a. names;

b. Social Security numbers; and

c. health or other insurance group ID numbers.

33. Kelly Benefits did begin notifying impacted individuals until April 2024. Defendant did not notify Plaintiff until April 23, 2025.

34. Kelly Benefits has posted a Notice of Data Security Event on its website and sent notifications to impacted customers, including those who were employees of: Amergis, Beam Benefits, Beltway Companies, CareFirst, The Guardian Life Insurance Company of

America, Intercon Truck of Baltimore, Publishers Circulation Fulfilment, Quantum Real Estate Management, and Transforming Lives.

35. Based on investigations to date, the Data Breach impacted more than 400,000 people.

36. The Notice was deficient in several ways, including: (1) it was not sent until four months after the Data Breach occurred; and (2) it did not explain whether Kelly Benefits has been able to contain or curtail the threat to Plaintiff or Class Members of the misuse of their PII or PHI. This further demonstrates that Kelly Benefits lacked reasonable security safeguards at the time of the Data Breach.

37. The hackers have or will exploit the data obtained in the Data Breach for profit. The hackers would not have incurred the time and effort to breach Kelly Benefits' systems to access users' PHI and PII and risk significant criminal prosecution if the information was not valuable. It is likely that Plaintiff's and Class Members' PHI and PII has already been or will imminently be published and sold on the Dark Web.

***B. Failure to Adopt Reasonable Systems and Protections***

38. Kelly Benefits did not adopt reasonable data systems and protections to safeguard the PHI and PII at issue, prevent and detect unauthorized access to this data, or identify users impacted by the Data Breach.

39. To receive services and benefits from Kelly Benefits, Plaintiff and Class Members were required to provide Kelly Benefits with sensitive PII and PHI, including their names, dates of birth, address, and SSN. Plaintiff and Class Members provided their PII and PHI to Kelly Benefits with the expectation and with the understanding that Kelly Benefits would take reasonable steps to maintain the confidentiality of this information and conform to applicable data privacy laws.

40. Kelly Benefits represented that it would safeguard Plaintiff and Class Members' PII and PHI.

41. Kelly Benefits generates millions of dollars of revenue as a direct result of collecting and storing PII and PHI. If it did not collect and store this information, then it could not efficiently or profitably sell its products or services and distribute benefits. Kelly Benefits therefore had ample resources and a strong motive to adopt reasonable protections. It also should have known that such protections were necessary given the highly personal nature and value of the information it stores.

42. Kelly Benefits knew or should have known that it would almost certainly be the target of hackers. Attempts by hackers to access large databases of PII and/or PHI, like those compiled by Kelly Benefits, have increased significantly over the last decade. In 2023 (the most recent year in which statistics have been released), more than 3,200 data breaches occurred, which is an all-time high. More than a quarter of them occurred in the medical, insurance, and/or health care industries. Every business involved in the collection and storage of PII and/or PHI is aware or should be aware of this threat, including Kelly Benefits.

43. On information and belief, Kelly Benefits failed to:

a. adequately train its employees on cybersecurity protocols;

b. implement reasonable security measures to prevent data breaches;

c. implement reasonable security measures to detect data breaches;

d. implement reasonable security measures to comprehend the scope of data breaches; and

e. implement reasonable security measures to timely determine who was impacted by data breaches.

44. Benefits administrators like Kelly Benefits are especially prime targets for hackers because of all the extensive personally identifiable information (PII) they manage. Employee benefit plans, such as retirement savings accounts and health and welfare plans, store sensitive data including Social Security numbers, birthdates, addresses, and medical

information. This wealth of PII is a rich target for cybercriminals because it can be exploited for identity theft, fraudulent insurance claims, and unauthorized access to financial accounts.[1]

45. Kelly Benefits had plenty of advanced warning that cybercriminals were targeting benefit administrators for their customers' PII and PHI. For instance, in 2022, Benefit Plan Administrators, Inc. experienced a significant data breach where hackers accessed sensitive PII and PHI, including Social Security numbers and medical data, affecting individuals associated with multiple organizations.[2] Nevertheless, Kelly Benefits failed to take reasonable measures to prevent a similar breach of its own systems.

46. Following the Data Breach, Kelly Benefits is attempting to adopt and implement reasonable data systems and procedures. As it explained following the Data Breach, Kelly Benefits is "deploying additional endpoint protections across our network" and "resetting all internal account passwords."

---

[1] *See* Frost Brown Todd, *"A Long Time Comin'": The DOL issues Cybersecurity Guidance, available at* https://frostbrowntodd.com/a-long-time-comin-the-dol-issues-cybersecurity-guidance-fiduciary-focus-series/ (last visited May 8, 2025) ("As the integration of technology in employee benefit plan administration has become practically ubiquitous, the risks of exposure or losses due to cyberattacks or data breaches have exponentially increased. PII is very valuable to cybercriminals because it is generally permanently associated with an individual and therefore has a very long shelf life.").

[2] *See* Cyber Security Incident Database, *available at* https://www.csidb.net/csidb/incidents/e40b39b0-07d4-415c-aa2d-a090e56a382d/ (last accessed May 8, 2025" ("Benefit Plan Administrators, Inc. (BPA) suffered a data breach when an unauthorized party accessed its computer network, compromising sensitive consumer data. The breach exposed full names, Social Security numbers, addresses, dates of birth, and medical information of individuals.").

47. Kelly Benefits has done little to help those impacted by the Data Breach. Kelly Benefits has offered twelve (12) months of free credit monitoring and identity protection services. However, these services will not help anyone whose PII or PHI is used by the hackers more than a year in the future. It also does nothing for individuals that have already been injured by the use of their PHI or PII in the more than four months since the Data Breach occurred.

***C. Plaintiff and Class Members' Injuries***

48. Plaintiff and Class Members believed Kelly Benefits would use reasonable security protocols and procedures to protect their PII and PHI. At minimum, they reasonably believed it would implement systems consistent with its stated privacy policies and state and federal law. Kelly Benefits obtained and maintains Plaintiff and Class Members' PII and PHI. Kelly Benefits, therefore, has a continuing legal duty and obligation to protect the data from unauthorized access and disclosure.

49. Plaintiff and Class Members believed that a portion of the funds paid to Kelly Benefits, either directly or through their employers, for Kelly Benefits' products and services would be used to provide adequate cybersecurity for their PII or PHI. Plaintiff's information was stolen by the hackers and has already been published—or will likely be published imminently—on the Dark Web or sold to other cybercriminals.

50. Plaintiff and Class Members have spent and will continue to spend time and effort monitoring their data and addressing issues caused by the Data Breach. As one news organization explained, to protect themselves, Plaintiff and Class Members must do things like: monitor personal accounts, use credit monitoring and identify protection services, stay updated and continue to monitor information about the Data Breach, and reach out to their employers for clarification concerning the Data Breach.

51. In addition, Plaintiff and Class Members now fear for the security of their PII and PHI and worry about information that was exposed in the Data Breach.

52. Due to the Data Breach, Plaintiff and Class Members have suffered and/or will suffer from physical injuries like anxiety, sleep disruption, stress, fear, and frustration due to the Data Breach. Such injuries go far beyond allegations of mere worry or inconvenience and are the type of personal injuries that the law contemplates and addresses.

53. Plaintiff and Class Members have a continuing interest in ensuring that their PII and PHI—which appears to remain in Defendant's possession—will be secure from any future hacking attempts.

54. Plaintiff and Class Members have suffered a significant loss in the value of their PII and PHI. Specifically, due to the Data Breach, Plaintiff and Class Members have suffered:

a. loss of the opportunity to control how their PII and PHI is used;

b. compromise and continuing publication of their PII and PHI;

c. out-of-pocket costs from trying to prevent, detect, and recover from identity theft and fraud;

d. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, inter alia, preventing, detecting, contesting, and recovering from identify theft and fraud;

e. unauthorized use of their stolen PII and PHI; and/or

f. continued risk of exposure of their PII and PHI.

55. There is a significant market for Plaintiff's and Class Members' stolen PII and PHI. In fact, SSNs are among the most valuable pieces of PII and PHI that an individual possesses.

56. Compensating Plaintiff and Class Members for their out-of-pocket expenses associated with the Data Breach is not sufficient to make them whole. According to the Department of Justice's Bureau of Justice Statistics ("BJS"), nearly one-third of "victims who had personal information used for fraudulent purposes . . . spent a month or more resolving

problems." In fact, for some victims, the BJS found that it took more than a year for them to resolve the issues.

57. Finally, given that the fraudulent activity stemming from the Data Breach may not come to light for several years, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, and the loss of time and money that comes with this.

### *D. Kelly Benefits Did Not Follow FTC Guidelines or Industry Standards*

58. According to guidance from the FTC, businesses that collect data from individuals should factor in the need for adequate data security into all business decision-making. The FTC has also provided guidance that identifies practices that allow companies like Kelly Benefits to protect themselves against data breach, i.e., established industry standards for adequate protection against data incidents.

59. As part of its 2016 guidelines, the FTC explained that, in order to adequately protect user data, a company should, among other things:

a. encrypt information stored on computer networks;

b. understand their network's vulnerabilities;

c. implement policies to correct security problems;

d. have response plans in place to ensure an adequate and timely response to a data breach;

e. require complex passwords to navigate the systems;

f. use industry-tested security methods;

g. have monitoring systems in place to detect suspicious activity; and

h. verify that third-party service providers have reasonable security systems in place.

60. Companies that fail to employ reasonable security systems and procedures may face an enforcement action from the FTC, as it often interprets such failures as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

61. Several practices have been established that provide baseline industry standards for businesses. These best practices include:

a. educating all employees;

b. strong passwords;

c. multi-layer security, including firewalls, anti-virus, and anti- malware software;

d. encryption (making data unreadable without a key);

e. multi-factor authentication;

f. backup data; and

g. limiting which employees can access sensitive data.

62. Other industry standard best practices include:

h. installing appropriate malware detection software;

i. monitoring and limiting network ports;

j. protecting web browsers and email management systems;

k. setting up network systems such as firewalls, switches, and routers;

l. monitoring and protection of physical security systems;

m. protection against any possible communication system; and

n. training staff regarding critical points.

63. Kelly Benefits failed to implement several of these industry standards and best practices, which directly and proximately caused the Data Breach and the injuries resulting therefrom to Plaintiff and Class Members.

***E. Tolling***

64. Any applicable statute of limitations has been tolled by Kelly Benefits' knowledge and concealment of the unlawful conduct and misrepresentations alleged herein. Plaintiff and Class Members could not have discovered Kelly Benefits' unlawful conduct through reasonable diligence.

65. Kelly Benefits knowingly, actively, affirmatively and/or negligently concealed the facts alleged herein. Plaintiff and Class Members reasonably relied on Kelly Benefits' concealment.

## VI. CLAIMS ALLEGED ON BEHALF OF THE CLASSES

### COUNT I

**Violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150**
**(On Behalf of the California Class)**

66. Plaintiff incorporates the above paragraphs as if fully set forth herein.

67. The CCPA provides consumers with a private right of action against businesses when their personal information is subject to unauthorized access, theft, or disclosure because of a business's breach of its duty to take reasonable steps to protect that information.

68. Plaintiff and the California Class Members are "consumers" as defined in the CCPA.

69. Defendant is a "business" as that term is defined in the CCPA.

70. Defendant stored Plaintiff's and the California Class Members' personal information as defined in Cal. Civ. Code § 1798.81.5(d)(1)(A), including but not limited to:

a. names;

b. Social Security numbers; and

c. health or other insurance group ID numbers.

71. Defendant has a duty to implement and maintain reasonable security procedures and practices to protect their users' personal information. As detailed herein, Defendant failed to do so, including by storing or transmitting the information in unencrypted and non-redacted form, or in some other form that permitted unauthorized individuals to access that information in violation of the CCPA.

72. As a direct and proximate result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the PII and PHI at issue, Plaintiff and California Class Members suffered unauthorized access and disclosure of their PII and PHI.

73. Plaintiff and the California Class Members seek actual pecuniary damages suffered due to the Data Breach and injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards customers' PII and PHI by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold their PII and PHI. Plaintiff and California Class Members have an interest in ensuring that their PII and PHI is reasonably protected moving forward.

74. On May 2, 2025, Plaintiff's counsel will send a notice letter to Defendant's registered agent and email a copy of the notice to Defendant as well. If Defendant cannot cure the issues caused by the Data Breach within 30 days of receipt of the letter, then Plaintiff intends to promptly amend the complaint to seek actual damages and statutory damages of $750 per California Class Member. Defendant almost certainly cannot

**COUNT II**

**Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.101**
**(On Behalf of Plaintiff and California Class)**

75. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs as if set forth herein.

76. California Civil Code § 56.101, subdivision (a) requires that Defendant maintain, preserve, and store "medical information . . . in a manner that preserves the confidentiality of the information contained therein.

77. If Defendant "negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information," then it "shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of § 56.36."

111. Kelly Benefits is a provider of a health care service plan that creates, maintains, preserves, or stores medical information. It failed to maintain, preserve, or store Plaintiff's and

California Class Members' medical information in a manner that preserves its confidentiality by failing to enact and adopt reasonable data security measures.

112. Kelly Benefits was at least negligent in failing to maintain the confidentiality of Plaintiff's and California Class Members' medical information. Kelly Benefits owed Plaintiff and California Class Members a statutory and common law duty to maintain the confidentiality of their medical information. Kelly Benefits breached that duty by negligently maintaining, preserving, and/or storing Plaintiff's and California Class Members' PHI. Defendant's breach of its duty directly and proximately caused harm to Plaintiff and California Class Members.

114. By violating the CMIA, Defendant is liable to Plaintiff and California Class Members for the greater of (i) actual damages or (ii) $1,000 per violation. Cal. Civil Code § 56.36(b). Plaintiff and California Class Members need not suffer or be threatened with any additional damages.

115. Defendant is also liable for reasonable attorney's fees, litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury.

**COUNT III**

**<u>Negligence</u>**
**(On Behalf of Plaintiff and the Nationwide Class)**

78. Plaintiff incorporates the above paragraphs as if fully set forth herein.

79. Plaintiff and the Nationwide Class entrusted their PII and PHI to Kelly Benefits based on the understanding that Kelly Benefits would take reasonable steps to safeguard this data.

80. Kelly Benefits owed a duty of care to Plaintiff and Nationwide Class Members concerning their PII and PHI because it was foreseeable that any failure by Kelly Benefits to adopt adequate security systems consistent with industry standards would increase the risk that

Plaintiff's and Nationwide Class Members' PII and PHI would be accessed by cybercriminals in a data breach.

81. As one of the largest employee benefits consulting firms in the country, Kelly Benefits has full knowledge of the sensitivity of the PII and PHI at issue in this case and the harm that unauthorized access can cause for Plaintiff and Nationwide Class Members.

82. Kelly Benefits owed these duties to Plaintiff and Nationwide Class Members because they are members of a well-defined, foreseeable, and probable class of individuals that Kelly Benefits knew or should have known would suffer injury-in-fact from Kelly Benefits' inadequate security practices and systems.

83. Kelly Benefits owed Plaintiff and Nationwide Class Members at least the following duties:

a. to exercise reasonable care in handling and using the PII and PHI in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized; and

c. notify Plaintiff and Nationwide Class Members within a reasonable timeframe of any breach to the security of their PII and PHI.

84. Therefore, Kelly Benefits owed a duty to timely and accurately disclose to Plaintiff and Nationwide Class Members the scope, nature, and occurrence of the Data Breach. Plaintiff and Nationwide Class Members needed Kelly Benefits to take appropriate measures to timely protect their PII and PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

85. Kelly Benefits also had a duty to exercise appropriate clearinghouse practices to remove PII OR PHI when it was no longer necessary to retain under applicable regulations.

86. Kelly Benefits knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII and PHI of Plaintiff and the

Nationwide Class involved an unreasonable risk of harm to Plaintiff and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

87. Kelly Benefits' duty to use reasonable security measures arose because of the special relationship that existed between Kelly Benefits, on the one hand, and Plaintiff and Nationwide Class Members, on the other hand. That special relationship arose because Plaintiff and Nationwide Class Members entrusted Kelly Benefits with their confidential PII and PHI, which is a necessary part of Defendants' products and services.

88. Under the FTC Act, 15 U.S.C. § 45, Kelly Benefits had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Nationwide Class Members' PII and PHI.

89. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII and PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Kelly Benefits' duty to protect Plaintiff and the Nationwide Class Members' sensitive PII and PHI.

90. Kelly Benefits violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with applicable industry standards as described in detail herein. Kelly Benefits' conduct was particularly unreasonable given the nature and amount of PII and PHI Kelly Benefits had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

91. The risk that unauthorized persons would attempt to gain access to the PII and PHI at issue here and misuse it was foreseeable. Kelly Benefits collects and stores PII and PHI for hundreds of thousands of individuals and claims that the privacy and security of

information entrusted to it is one of its top priorities. Similarly sized service providers have repeatedly been subject to data breaches in the recent past. Therefore, it was inevitable that unauthorized individuals would attempt to access Kelly Benefits' databases—whether by malware or otherwise.

92. The PII and PHI at issue is highly valuable, which Kelly Benefits knew, or should have known. The same is true concerning Kelly's knowledge of the significant risks associated with obtaining, using, handling, emailing, and storing the PII and PHI of Plaintiff and Nationwide Class Members and the importance of exercising reasonable care in handling it.

93. Kelly Benefits improperly and inadequately safeguarded the PII and PHI of Plaintiff and the Nationwide Class in deviating from industry standards, regulations, and practices at the time of the Data Breach.

94. Kelly Benefits breached these duties as evidenced by the Data Breach and subsequent detection of the Data Breach and notice to impacted individuals concerning the Data Breach.

95. Kelly Benefits acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Nationwide Class Members' PII and PHI by:

a. enabling access to this information by third parties through negligent website design; and

b. failing to properly supervise the manner in which the PII and PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

96. Kelly Benefits breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII and PHI of Plaintiff and Nationwide Class Members. This actually and proximately caused the Data Breach and Plaintiff's and Nationwide Class Members' injury.

97. Kelly Benefits further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Nationwide Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach.

98. Kelly Benefits has admitted that the PII and PHI of Plaintiff and the Nationwide Class was wrongfully lost, accessed, and/or disclosed to unauthorized third persons because of the Data Breach.

99. As a direct and proximate result of Kelly Benefits' negligence and/or negligent supervision, Plaintiff and Nationwide Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

100. Also, Kelly Benefits' negligence and failure to exercise reasonable care directly and proximately caused actual, tangible, injury-in-fact and damages for Plaintiff and Nationwide Class Members, including the theft of their PII and PHI by criminals, improper disclosure of their PII and PHI, lost benefit of their bargain, lost value of their PII and PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Kelly Benefits' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Determining that this action is a proper class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representatives, and appointing the undersigned counsel as Class counsel;

B. An award of compensatory damages, punitive damages, statutory or civil penalties to Plaintiff and the Classes as warranted by applicable law;

C. Injunctive or other equitable relief that directs Defendant to implement reasonable security procedures and practices to protect users' PII and PHI that conform to relevant federal and state guidelines and industry norms;

D. Awarding Plaintiff and the Classes reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

E. Such other relief as the Court may deem just and proper.

## VIII. JURY DEMAND

Plaintiff demands trial by jury of all issues so triable as of right.

DATED: May 9, 2025

*/s/ Amy E. Keller*___________

**MOGIN LAW LLP**
Timothy Z. LaComb (SBN 314244)
Daniel J. Mogin (SBN 95624)
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (619) 687-6611
Facsimile: (619) 687-6610
dmogin@moginlawllp.com
tzlacomb@moginlawllp.com

**DiCELLO LEVITT LLP**
Amy E. Keller
Ten North Dearborn St., Sixth Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
Facsimile: (312) 253-1443
akeller@dicellolevitt.com

Corban S. Rhodes
485 Lexington Ave, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
Facsimile: (646) 494-9648
crhodes@dicellolevitt.com

Steven M. Jodlowski
4747 Executive Drive, Suite 240
San Diego, CA 92121
Tel.: (619) 923-3939
Facsimile: (619) 923-4233
stevenj@dicellolevitt.com

*Attorneys for Plaintiff and the Class*